# Exhibit 4

> NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**AXIS**

**AXIS Insurance Company**
**303 W. Madison, Suite 500, Chicago, Illinois 60606**
**866-259-5435**

Policy No.: MCN000193951301
Renewal of: New

# MEDIA/PROFESSIONAL INSURANCE™
# FILM & ENTERTAINMENT LIABILITY POLICY DECLARATIONS

**CLAIM EXPENSE** IS INCLUDED IN THE POLICY LIMIT AND SELF-INSURED RETENTION.  THE LIMIT OF LIABILITY AVAILABLE TO PAY **DAMAGES** SHALL BE REDUCED AND MAY BE TOTALLY EXHAUSTED BY AMOUNTS INCURRED AS **CLAIM EXPENSE**. PLEASE READ YOUR POLICY CAREFULLY.

1. **Named Insured** and Address:
   Program Providers Furnishing Matter to A&E Television Networks
   235 45th Street
   New York, New York  10025

2. Policy Period:     From   April 1, 2013          To     April 1, 2014
   12:01 A.M. standard time at the address of the **Named Insured** as shown above.

3. Policy Limits:        $ ▮▮▮▮        **Each Loss**

                         $ ▮▮▮▮        Total Limit of Insurance

4. Self-Insured Retention    $ ▮▮▮▮    **Each Loss**

5. Annual Premium:       $          ▮▮▮▮▮▮        ▮▮▮▮

   Policy Period Premium:    $

   State Surcharge/Tax:   $ ▮▮
   Policy Fee:            $
   Surplus Lines Tax:     $
   Stamping Fee:          $
   Policy Total           $

6. **Scheduled Production(s):**

   See "Each Scheduled Production Amendatory Endorsement"
   Special Conditions:
   1. Rate - $0.15
   2. Dog The Bounty Hunter will be underwritten by us subject to special terms and conditions.
   3. The application will be the Production Insurance Application created by Aon/Albert G. Ruben.  Ruben will be responsible for reviewing all applications and notifying the company if anything material appears on the application.
   4. Any in-house A&E productions declared to the program must be favorably reviewed by the underwriter.

Class Code: 2-14160

Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

7. Coverage Form:  Film & Entertainment Liability Policy - FE-003-N (01-12)

Endorsements and other forms attached to this policy:

1. A&E Television Networks Library Endorsement
2. A&E Television Networks Program Provider Policy
3. Cancellation/Nonrenewal Notice Endorsement
4. Each Scheduled Production Manuscript Endorsement
5. Merchandising Licensing Endorsement
6. Mitigation Expense Coverage Endorsement
7. Music Coverage Endorsement
8. Title Coverage Endorsement
9. Subpoena Defense Legal Expense Endorsement - FE-49 (7-09)
10. New York Amendatory Endorsement - NY-03 (02-11)
New York Consent Agreement - NY-07 (02-11)

**All notices and inquiries should be addressed to:**
**AXIS PRO**
**a business unit of the Professional Lines Division of AXIS Insurance**
**1201 Walnut, Suite 1800**
**Kansas City, Missouri  64106**

_____
Authorized Representative

**Issued On:** May 31, 2013

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

# MEDIA/PROFESSIONAL INSURANCE™
# FILM & ENTERTAINMENT LIABILITY POLICY

(**Claim Expense** Within the Policy Limit)

**IMPORTANT NOTICE**

**CLAIM EXPENSE** IS INCLUDED IN THE POLICY LIMIT AND THE SELF-INSURED RETENTION.

ALL WORDS OR PHRASES, OTHER THAN CAPTIONS, PRINTED IN BOLD FACE ARE DEFINED IN THE POLICY.

VARIOUS PROVISIONS IN THIS POLICY RESTRICT COVERAGE.  READ THE ENTIRE POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT INSURED.

In consideration of the payment of the premium and in reliance on the statements in the Application and subject to all other terms of this policy, the Company designated in the Declarations agrees with the **Insured** named in the Declarations to the following:

I.   **COVERAGE AGREEMENTS**

**Media Liability**

The Company will pay on behalf of the **Insured** all **Damages** and **Claim Expense**, in excess of the Self-Insured Retention and within the applicable Policy Limit, as a result of an **Occurrence** in connection with **Scheduled Production(s)** during the Policy Period that gives rise to a **Claim**, regardless of when a **Claim** is made or suit is brought, including but not limited to **Claims** for or arising out of:

1.  any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage, outrageous conduct or prima facie tort;

2.  any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

3.  any form of infringement or dilution of title, slogan, trademark, trade name, trade dress, service mark or service name;

4.  any form of infringement of copyright, violation of **Droit Moral**, passing-off, plagiarism, **Piracy** or misappropriation of ideas under implied contract;

5.  breach of a license to use a third party's trademarked or copyrighted **Matter**, but only arising from a use that unintentionally exceeds the scope of the license with respect to the territory, period or media in which the **Matter** may be used and only when alleged in conjunction with a **Claim** covered in 3. or 4. above;

6.  breach of agreement, breach of confidentiality or promissory estoppel, in connection with the failure to maintain the confidentiality of a source or materials furnished by a source or the failure to portray a source or a subject in a certain light;

7.  failure to attribute authorship or provide credit under any agreement to which an **Insured** is a party;

8.  wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

Class Code: 2-14160

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

9.   false arrest, detention or imprisonment, abuse of process or malicious prosecution;

10. **Unfair Competition** or conspiracy, but only when alleged in conjunction with a **Claim** covered in 1. – 9. above;

11.  negligent supervision of an employee, but only when alleged in conjunction with a **Claim** covered in 1. – 9. above;

12. **Contextual Error or Omission**; or

13.  negligent transmission of a computer virus or malicious code, or any unauthorized access to or posting on a covered website of an **Insured** that results in a **Claim** covered in 1. – 9. or 12. above.

II.  **DEFINITIONS**

A.  "**Additional Insured**" means any distributor, licensee, exhibitor, bond company or financer of a **Scheduled Production(s)** that a **Named Insured** or any **Subsidiary** has agreed to hold harmless or indemnify for the **Scheduled Production(s)**, but only with respect to the circumstances specified in Part II., **DEFINITIONS, C. Assumed Under Contract**. The coverage provided to such **Additional Insureds** by this policy is primary and not excess of or contributory to any other insurance provided for the benefit of or by such **Additional Insured**.

B.  "**Advertising**" means publicity, press releases, promotional material or promotion of any kind that are publicly disseminated to promote the **Scheduled Production(s)** of an **Insured**.

C.  "**Assumed Under Contract**" means liability assumed by the **Named Insured** or its **Subsidiaries** in the form of hold harmless or indemnity agreements executed with any party, but only as respects:

   1.  the types of **Claims** falling within the Coverage Agreements; and

   2.  **Matter** furnished by the **Named Insured** or its **Subsidiaries**.

Examples of **Assumed Under Contract** are hold harmless or indemnity agreements with advertisers, advertising agencies, publishers, broadcasting companies and networks, cable television systems, authors and other entities distributing **Matter**.

D.  "**Bodily Injury**" means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

E.  "**Claim**" means any of the following against the **Insured**:

   1.  a demand or assertion of a legal right, even if any of the allegations of the **Claim** are groundless, false or fraudulent;

   2.  a suit seeking injunctive relief relating to the types of **Claims** specified in the Coverage Agreements;

   3.  any written request to toll or waive a statute of limitations relating to a potential **Claim**;

   4.  any arbitration or mediation proceeding; or

   5.  a written demand for a retraction or correction.

F.  "**Claim Expense**" means, when authorized and approved by the Company:

   1.  reasonable fees charged by an attorney in defense of a **Claim**, including such fees necessitated by investigating, handling or responding to a demand for a retraction, correction or clarification;

   2.  all other reasonable fees, costs and expenses which result from the investigation, discovery, adjustment, defense, negotiation, arbitration, mediation, settlement or appeal of a **Claim**;

   3.  premiums on appeal bonds required as a result of a covered **Claim** and premiums on bonds to release attachments for a bond amount not exceeding the applicable Policy Limit, but the Company has no obligation to apply for or furnish any such bonds.

©2007, 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc. All Rights Reserved.

"**Claim Expense**" does not include salary charges or expenses of regular employees of the **Insured**.

G. "**Contextual Error or Omission**" means any negligent act, error, omission or misstatement in **Matter** in **Scheduled Production(s)** by or with permission of the **Insured**.

H. "**Damages**" means any of the following costs the **Insured** is legally obligated to pay because of liability imposed by law or **Assumed Under Contract**: monetary judgment, award or settlement, including those that are actual, statutory, punitive, multiplied, or exemplary; pre- and post-judgment interest; and legal expense of others.

In determining the insurability of punitive or exemplary damages, or the multiplied portion of any multiplied damage award, the law of the jurisdiction most favorable to the insurability of those damages will control for purposes of resolving any dispute between the Company and the **Insureds**, provided that such jurisdiction is:

1. where the punitive, exemplary or multiplied damages were awarded or imposed;

2. where all or part of the conduct giving rise to the **Claim** took place;

3. where either the Company or any **Insured** is incorporated, has its principal place of business or resides; or

4. where this policy was issued or became effective.

The maximum portion of pre-judgment or post-judgment interest the Company will pay on behalf of the **Insured** will be no greater than the proportion of **Damages** covered by this policy on which interest is assessed bears to the total **Damages** for the **Claim** on which such interest is assessed.

"**Damages**" does not include:

1. production costs, loss of profits or the cost of recall, return, reproduction, reprinting or correction of **Matter** by any **Insured** or indemnitee or the cost of compliance with an injunction or other court order;

2. fines and penalties, including but not limited to, governmental, civil or criminal fines or penalties; or

3. royalties, sums, deposits, commissions, charges or fees assessed by ASCAP, SESAC, RIAA, BMI or other licensing organizations or on their behalf or for others arising from the failure, directly or indirectly, by the **Insured** to obtain or maintain required licenses or payments;

or any **Claim Expense** resulting therefrom.

I. "**Droit Moral**" means the creator's rights to attribution and the integrity of a work.

J. "**Each Loss**" means all **Damages** and **Claim Expense** arising out of an **Occurrence**.

K. "**First Named Insured**" means the **Named Insured** first listed in the Declarations under Item 1., **Named Insured**.

L. "**Insured**" means, individually and collectively:

1. the **Named Insured**;

2. any **Subsidiary** in existence on the Inception Date of this policy;

3. the **Named Insured's** or **Subsidiary's** stockholders for their liability as stockholders;

4. the **Named Insured's** or **Subsidiary's** partners, officers, directors, trustees and full-time, part-time, seasonal, leased, or temporary employees, or volunteers, but only with respect to their activities within the scope of their duties in such capacity for the **Named Insured** or **Subsidiary**;

5. the **Named Insured's** or **Subsidiary's** former partners, officers, directors, trustees and employees, but only with respect to their activities within the scope of their duties as the **Named Insured's** or **Subsidiary's** partner, officer, director or employee;

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

6.   any agent or independent contractor providing services or **Matter** through or under the direction of the **Named Insured** or its **Subsidiaries** and for which the **Named Insured** or its **Subsidiaries** agrees to provide the insurance afforded by this policy as respects such services or **Matter**;

7.   any **Additional Insured**;

8.   any loan-out company and their employees, but only with respect to the specific work for which the loan-out company has agreed to supply the services of its employees to the **Named Insured** or any **Subsidiary** for a **Scheduled Production(s)**; or

9.   any person or entity added by endorsement to the policy.

In the event of death, incompetency, insolvency or bankruptcy of any **Insured**, the term "**Insured**" includes the **Insured's** legal representative, but only with respect to their activities within the scope of their duties in such capacity.

M.   "**Insurer**" means the Company stated in the Declarations and any other affiliated company.

N.   "**Matter**" means communicative or informational content regardless of the nature or form of such content, including content disseminated electronically and/or digitally when authorized or controlled by the **Insured** (e.g. via websites, chat rooms, bulletin boards, databases and blogs).

O.   "**Merchandising Licensing**" means:

1.   the use of copyrights, trademarks and related intellectual property of the **Insured** or licensed from others in connection with the sale of goods or services; or

2.   the licensing to any third party of any copyright, trademark and related intellectual property for use in connection with the sale of goods or services.

P.   "**Named Insured**" means the person(s) or entity(ies) named in Item 1. of the Declarations of the policy.

Q.   "**Occurrence**" means the actual or alleged:

1.   acts committed in the process of researching, investigating, gathering, obtaining, acquiring, developing, preparing, compiling or producing **Matter**, or

2.   the licensing, syndication, serialization, sale, distribution, lease, release, exhibition, broadcast or other dissemination of **Matter**;

by or with the permission of the **Insured**.

R.   "**Over-redemption**" means price discounts, prizes, awards or other valuable consideration given in excess of the total contracted or expected amount.

S.   "**Piracy**" means the wrongful use, reprinting or reproduction of copyrighted intellectual property.

T.   "**Property Damage**" means:

1.   physical injury to or destruction of tangible property, including the loss of the use thereof at any time resulting therefrom; or

2.   loss of use of tangible property which has not been physically injured or destroyed.

U.   "**Scheduled Production(s)**" means the production(s) specified in Item 6. of the Declarations or by endorsement and related **Advertising**.

V.   "**Subsidiary**" means any entity more than fifty percent (50%) owned and controlled by a **Named Insured**.

W.   "**Unfair Competition**" means the misuse of an intellectual property right in **Matter**.

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

III. **POLICY LIMITS AND SELF-INSURED RETENTION**

A. **Policy Limits**

Regardless of the number of:

1. **Insureds** under this policy;

2. **Occurrences**;

3. policies issued by the Company;

4. Coverage Agreements;

5. persons or organizations who sustain **Damages**; or

6. **Claims** made or suits brought,

the most the Company will pay is as follows:

a. **Each Loss**

Subject to paragraph **B.** below, the applicable Policy Limit stated for **Each Loss** in Item 3. of the Declarations is the most the Company will pay for **Each Loss**.

b. **Total Limit of Insurance**

The Total Limit of Insurance stated in Item 3. of the Declarations is the most the Company will pay for the total of all **Claims** covered under this policy.

B. **Self-Insured Retention**

The Self-Insured Retention stated in Item 4. of the Declarations will be those amounts first incurred and payable by the **Insured** for **Each Loss**. The Self-Insured Retention applies to both **Damages** and **Claim Expense** or any combination thereof.

The applicable Policy Limit will be in excess of the Self-Insured Retention amount stated in Item 4. of the Declarations. The Self-Insured Retention will not reduce the applicable Policy Limit.

C. **Application of Policy Limit and Self-Insured Retention to Each Loss**

The date that **Each Loss** takes place will be deemed to be the date on which the first of the **Occurrences** contributing to **Each Loss** took place. **Occurrences** that take place on one or more dates during a Policy Period or periods of insurance issued by an **Insurer** and involve the same or related subject, person, class of persons or have common facts or circumstances or involve common transactions, infringements, events or decisions, regardless of the number of repetitions, alterations, actions or forms of communication, will be deemed related **Occurrences**. In the case of a continued distribution of **Scheduled Production(s)** on beyond the expiration date of the last of consecutive Policy Periods of insurance issued by an **Insurer**, the date of the related **Occurrences** and any resulting **Each Loss** shall be deemed to be the date on which the first of the related **Occurrences** takes place during a Policy Period of insurance issued by an **Insurer**. Only the applicable Policy Limit and Self-Insured Retention in effect when the first of the related **Occurrences** took place will apply.

IV. **EXCLUSIONS**

A. The Company will not be obligated to pay **Damages** or **Claim Expense** for **Claims** for or arising out of any actual or alleged:

1. breach of contract, including but not limited to breach of any express warranty or guarantee, except that this exclusion shall not apply to:

©2007, 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc. All Rights Reserved.

    a.   liability which the **Insured** would have incurred in the absence of such contract, warranty, guarantee or fiduciary relationship;

    b.   liability **Assumed Under Contract**; or

    c.   breach of license, contract or agreement as described in I., **COVERAGE AGREEMENTS**, **Media Liability**, 5., 6. or 7., or misappropriation of ideas under implied contract as referenced in the last phrase of I., **COVERAGE AGREEMENTS**, **Media Liability**, 4.;

2.   breach of any fiduciary duty or fiduciary relationship, including but not limited to duties or relationships involving media credits or funds which the **Insured** either collects or holds for another;

3.   false, misleading, deceptive or fraudulent statement in **Advertising** or **Unfair Competition** based thereon;

4.   infringement of patent, contributing to infringement of patent or inducement to infringe patent;

5.   theft, disclosure or misappropriation of trade secrets, except that this exclusion shall not apply to **Claims** for or arising from disclosure of trade secrets when the disclosure is made in **Scheduled Production(s)**;

6.   **Unfair Competition** or unfair or deceptive business acts or practices, but only when not directly related to and alleged in conjunction with a **Claim** covered in 1. – 9. of Coverage Agreement **A.**;

7.   price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Antitrust Act, the Clayton Act or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities;

8.   acts that a jury or court finds to be fraudulent or criminal; except that this exclusion shall not apply to:

    a.   any **Insured** who is a natural person and who did not personally commit, acquiesce or participate in the fraudulent or criminal act;

    b.   any acts that were approved in advance by the **Insured's** legal counsel based on a good faith belief that the acts would be protected by the First Amendment of the U.S. Constitution or a similar provision of a state constitution; or

    c.   prosecutions of an **Insured** for criminal libel or violations of the Espionage Act;

9.   actions, decisions, orders or proceedings by the Federal Trade Commission, Federal Communications Commission or any other federal, state or local governmental regulatory agency;

10.  **Bodily Injury** or **Property Damage**, except that this exclusion shall not apply to:

    a.   **Bodily Injury** or **Property Damage** arising out of a **Contextual Error or Omission**; or

    b.   sickness, mental anguish or emotional distress actually or allegedly arising from a **Claim** otherwise covered by the policy; or

    c.   **Claims** alleging incitement;

11.  **Bodily Injury** caused by the use of any product, including but not limited to tobacco, alcohol, pharmaceutical, or firearm products;

12.  violations of the Securities Act of 1933, the Securities Exchange Act of 1934, any state blue sky or securities law or any similar state or federal law, or any amendment to the above laws or any violation of any regulation, ruling or order issued pursuant to the above laws;

13.  **Over-redemption** of coupons, awards or prizes from advertisements, promotions, games, sweepstakes, contests and games of chance; or violation of or noncompliance with any law or regulation governing or pertaining to gambling, gaming, lotteries or games of chance and any other wrongful act associated with any such violation or noncompliance;

©2007, 2011 AXIS Specialty U.S. Services, Inc. All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc. All Rights Reserved.

14. unauthorized access to, unauthorized use of, or unauthorized alteration of any computer or system, hardware, software, program, network, data, database, communication network or service, including the introduction of malicious code or virus by any person, except that this exclusion shall not apply to a **Claim** covered in 13. of Coverage Agreement **A.**;

15. any delay, interruption or failure of, or damage to any computer or communication network, hardware, software, program, data, database or service;

16. infringement of copyright or any other intellectual property right in any software, computer program, computer code or computer system;

17. unsolicited electronic communications by or on behalf of the **Insured**, including unsolicited faxes, e-mails and telephone calls.  This exclusion shall include actual or alleged violations of state, local or federal law, including non-U.S. laws, any amendment to such laws or violation of any order, ruling or regulation issued pursuant to such laws that regulate such electronic communications;

18. professional or consulting services that are separate and distinct from the utterance or dissemination of **Matter** and are performed for others for a fee;

19. discharge, dispersal or release of any pollutant or any threats thereof; or the creation of an injurious condition involving any pollutant; or the existence of any pollutant on any property; or the clean up, removal, testing, monitoring, containment, treatment, detoxification or neutralization of any pollutant.  This exclusion IV.**A.**19., is effective whether or not the pollution was sudden, accidental, gradual, intended, expected or preventable or whether or not any **Insured** caused or contributed to the pollution.  For the purposes of this exclusion, pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

    a. smoke, vapor, soot, fumes, acids, alkalis, chemicals, lead, silica, mold or asbestos;

    b. hazardous, toxic or radioactive matter or nuclear radiation;

    c. waste, which includes material to be recycled, reconditioned or reclaimed; or

    d. any other pollutant as defined by applicable federal, state or local statutes, regulations, rulings or ordinances;

20. **Merchandising Licensing**, unless specifically endorsed hereon;

21. infringement or other **Claims** arising from the title of any **Scheduled Production(s)** until a satisfactory title report is submitted and approved by the Company and specifically endorsed hereon;

22. infringement or other **Claims** arising from the music contained in any **Scheduled Production(s)** until all releases, licenses, consents and other rights have been obtained and written confirmation of such is submitted to and approved by the Company and the Company issues an endorsement deleting or modifying this exclusion;

23. **Occurrence** or other act, error, omission, fact, circumstance, situation, transaction, event or decision that is underlying or alleged in any prior and/or pending litigation, administrative or regulatory proceeding, or **Claim** prior to the Inception Date stated in Item 2. of the Declarations.

**B.** The Company will not be obligated to pay **Damages** or **Claim Expense** for **Claims** made by:

1. any present, former or prospective employee based on, resulting from or arising directly or indirectly out of the employment relationship or the nature, terms or conditions of employment, including, but not limited to discrimination, harassment, wrongful discharge, breach of contract, employment-related defamation or workplace or employment torts;

2. an **Insured** against any other **Insured**, but this exclusion shall not apply to:

    a. any **Claim** in which the **Insured** bringing the **Claim** was not acting within the scope of its duties as an **Insured** in connection with the **Occurrence** giving rise to the **Claim**; or

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

    b.  any independent contractor who does not qualify as an **Insured** under II.**L.**6. of the policy.

## V.  CONDITIONS

### A.  Time of Inception; Policy Period

This policy will begin at 12:01 a.m. on the Inception Date shown in Item 2. of the Declarations.  The policy will continue to apply until 12:01 a.m. on the Expiration Date shown in Item 2. of the Declarations unless terminated at an earlier date.

### B.  Territory

The territory of the policy is universal.  If **Damages** or **Claim Expense** are paid in a currency other than United States of America dollars, then the payment under this policy will be considered to have been made in United States dollars at the conversion rate which is in effect at the time of the payment.

### C.  Premium

The **First Named Insured** will pay to the Company the annual and minimum premium stated in Item 5. of the Declarations.  The premium may be adjusted at any time during the Policy Period or any extensions of the Policy Period based upon additions or deletions of entities or changes in the provisions of the policy as may be agreed upon by the **First Named Insured** and the Company.

In the event the policy is canceled the minimum premium stated in Item 5. of the Declarations shall be fully earned.

### D.  Change of Operations

This policy applies to the **Scheduled Production(s)** and **Insureds** described at the Inception Date of this policy in the Declarations or by endorsement.  This policy shall not apply to any additional productions unless, with the Company's consent, such productions are added by endorsement hereto.  The **First Named Insured** shall promptly pay any additional premium that may become due.

### E.  Defense; Cooperation of Insured; Settlement; Confidentiality of Sources

   1.  **Insured's Duties in the Event of Claim; Conduct of Defense; Cooperation**

      a.  The **Named Insured** shall give prompt notice to the Company of any **Claim** or suit under this policy.

          Notification will be sent to the Company in care of the Company's AXIS PRO business unit as follows:

          Claims Department
          AXIS PRO
          1201 Walnut, Suite 1800
          Kansas City, Missouri  64106

          Email:   USclaimnoticekc@AXISCapital.com
          Fax:     816.471.6119

      b.  The Company shall have the right and duty to defend any **Claim** or suit for which coverage is afforded under this policy.  The Company will employ counsel to represent the **Insured.**  The **Insured** may at any time consult with the Company with respect to selection of counsel.

      c.  The **Insured** will in all respects cooperate with, and provide information requested by, the Company with respect to any **Claim** for which insurance is afforded under this policy and, at the Company's request, assist in mitigating **Damages**, making settlements and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured**.  The **Insured** will attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The **Insured** and the counsel employed to defend the **Insured** will comply with all litigation and billing standards or procedures requested by the Company.

FE-003-N (01-12)                                                      Page 8  of  11

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

d.  The rights of an **Insured** under this policy will not be prejudiced by the refusal of any **Insured**, or anyone for whose acts any **Insured** is legally liable, to reveal the identity of a confidential source or to divulge confidential information in connection with a **Claim** under the policy.

2.  **Settlements and Appeals**

The **Named Insured** may settle any **Claim** for which the total cost of **Damages** and **Claim Expense** associated therewith is less than the amount of the remaining Self-Insured Retention.  No offer to settle any other **Claim** will be made or accepted without prior written agreement by the Company.

3.  **Spousal Coverage**

If a **Claim** made against an **Insured** includes a **Claim** against that **Insured's** lawful spouse solely by reason of:

a.  such spouse's status as the **Insured's** spouse; or

b.  such spouse's ownership interest in property from which the claimant seeks recovery for the **Insured's** acts, errors or omissions;

then all loss which such spouse becomes legally obligated to pay on account of such **Claim** shall be treated for purposes of this policy as loss which the **Insured** is legally obligated to pay on account of the **Claim** made against the **Insured**.  Such loss shall be covered under this policy only if and to the extent that such loss would be covered under this policy if incurred by the **Insured**.  The coverage extension afforded by this subsection does not apply to any **Claim** alleging acts, errors or omissions by the **Insured's** spouse.  The term "spouse" as used in this subsection shall include any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law in the United States of America.

F.  **Retraction or Correction**

The **Insured** will have sole discretion on whether to retract, correct or clarify **Matter** that is the subject of a **Claim** under the policy.

G.  **Other Insurance**

The insurance afforded by this policy is excess over any other valid and collectible insurance available to the **Insured**, except insurance specifically arranged by the **Named Insured** to apply in excess of this insurance.

H.  **Subrogation**

In the event of any payment under this policy, the Company will be subrogated to all the **Insured's** rights of recovery therefor against any person or organization, and the **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The **Insured** will do nothing to prejudice such rights.  The Company will have no rights of subrogation against any **Insured** hereunder.  Any recoveries will be applied as follows:

1.  First, to the Company if the Company incurs expenses to bring suit or otherwise exercise rights of recovery, up to the amount of expenses so incurred;

2.  Then, to the Company up to the amount of the Company's payment for **Damages** and **Claim Expense**; and

3.  Then, to the **First Named Insured** as recovery of Self-Insured Retention amounts paid as **Damages** and **Claim Expense**.

The Company, at its sole discretion, has the right to determine whether it will pursue any recovery under this provision.

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

I.   **Changes**

Notice to any agent or knowledge possessed by any agent or by any other person will not effect a waiver or a change in any part of this policy, or estop the Company from asserting any rights under the terms of this policy; nor will the terms of this policy be waived or changed except by written endorsement issued to form a part of this policy.

J.   **Assignment**

Assignment of any interest or right under this policy will not bind the Company until its written consent is endorsed hereon.

K.   **Action Against the Company**

1.   No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy, nor until the amount of the **Insured's** obligation to pay has been fully determined either by judgment against the **Insured** after actual trial or arbitration or by written agreement between the **Insured**, the claimant and the Company.

2.   Any person or organization, or the legal representative thereof, who has secured such judgment or written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

3.   No person or organization will have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the Company be impleaded by the **Insured** or the **Insured's** legal representative.  Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the Company of any of its obligations hereunder.

L.   **Cancellation and Nonrenewal**

1.   **Cancellation**

This policy may be canceled by the **First Named Insured** by mailing to the Company or its authorized representative written notice stating when thereafter the cancellation will be effective.  This policy may be canceled by the Company by mailing to the **First Named Insured** written notice stating when, not less than sixty (60) days thereafter, such cancellation will be effective.  If cancellation is a result of nonpayment of premium or Self-Insured Retention, the Company will give written notice stating when, not less than ten (10) days thereafter, such cancellation will be effective.

If this policy is canceled prior to the Expiration Date and the minimum premium does not apply, the premium due the **First Named Insured** will be:

a.   the pro rata unearned amount of the annual premium subject to a factor of .90, if such cancellation is by the **First Named Insured**; or

b.   the pro rata unearned amount of the annual premium, if such cancellation is by the Company;

but the return of such premium to the **First Named Insured** is not a condition of cancellation.

The notice will be mailed or delivered to the **First Named Insured's** last mailing address known to the Company.  If notice is mailed, proof of mailing will be sufficient proof of notice.

2.   **Nonrenewal**

The Company may elect not to renew this policy by mailing or delivering written notice of nonrenewal to the **First Named Insured's** last mailing address known to the Company.  The Company will mail or deliver the notice at least sixty (60) days before the Expiration Date of the policy.

If notice is mailed, proof of mailing will be sufficient proof of notice.  However, the offer of renewal terms, conditions or premium different from those in effect prior to renewal does not constitute nonrenewal.

©2007, 2011 AXIS Specialty U.S. Services, Inc.  All Rights Reserved.
Media/Professional Insurance™ is a trademark of AXIS Specialty U.S. Services, Inc.  All Rights Reserved.

**M. Authorization**

The **First Named Insured** is responsible for assurance of payment of all premiums and Self-Insured Retentions. The **First Named Insured** will have exclusive authority to act on behalf of all other **Insureds** with respect to providing and receiving notices of cancellation and nonrenewal, and to receiving any return premium.  In the event of a disagreement between any **Insureds**, the **First Named Insured** will have exclusive authority to act on behalf of all other **Insureds** with respect to selection of counsel, conduct of defense, negotiation of settlements and the decision to appeal or not to appeal any judgment.

**N. Representations**

By acceptance of this policy, the **Named Insured** agrees:

1.  the statements furnished to the Company in the Application and any Renewal Application for this insurance are accurate and complete;

2.  those statements furnished to the Company are representations the **Named Insured** made to the Company on behalf of all **Insureds**;

3.  those representations are a material inducement to the Company to issue this policy;

4.  the Company has issued this policy in reliance upon those representations;

5.  this policy embodies all agreements existing between the **Insured** and the Company or any of its agents relating to this insurance; and

6.  the Application or Renewal Application, including any attachments, and all other information and materials submitted by or on behalf of the **Insureds** to the Company in connection with the Company underwriting this policy, will be kept on file by the Company, deemed attached to this policy as if physically attached to it and shall become incorporated in and constitute a part of this policy.

**O. Severability**

With regard to the information provided on any insurance Application or Renewal Application, only facts pertaining to and knowledge possessed by any of the **First Named Insured's** chairperson of the board of directors, president, chief executive officer, chief operating officer, chief financial officer, risk manager, in-house counsel or any person whose signature appears on the Application or Renewal Application, shall be imputed to the **Insured**.

In Witness Whereof, the Company has caused this policy to be executed and attested, but this policy will not be valid unless countersigned by a duly authorized representative of the Company.

_____

President

_____

Secretary

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 1

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**A&E TELEVISION NETWORKS LIBRARY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)**

In consideration of the premium charged, it is agreed that:

The introductory wording of Part I., **COVERAGE AGREEMENTS**, **Media Liability** of the policy is deleted in its entirety and replaced by the following:

> The Company will pay on behalf of the **Insured** all **Damages** and **Claim Expense**, in excess of the Self-Insured Retention and within the applicable Policy Limit, as a result of an **Occurrence** in connection with **Scheduled Production(s)** that gives rise to a **Claim**, regardless of when a **Claim** is made or suit is brought, including but not limited to **Claims** for or arising out of:

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page 1  of  1

_____
Authorized Representative

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE
FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE
NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 2

Effective date of this endorsement: 12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**A&E TELEVISION NETWORKS – PROGRAM PROVIDER POLICY - MANUSCRIPT**

This endorsement modifies insurance provided under the following:

**MEDIA/PRO™ FILM AND ENTERTAINMENT LIABILITY INSURANCE POLICY FE-003-N**

In consideration of the premium charged, it is agreed that:

Part II.  **DEFINITIONS, K. First Named Insured** is deleted and replaced by:

  K.  "**First Named Insured**" means A&E Television Networks, its **Subsidiary(ies)** and affiliated companies, the officers, directors and employees thereof (collectively, "AETN").

Part II.  **DEFINITIONS, N. Matter** is deleted and replaced by the following:

  N.  "**Matter**" means communicative or informational content regardless of the nature or form of such content, including content disseminated electronically and/or digitally.

Part II.  **DEFINITIONS, P.  Named Insured** is deleted and replaced by:

  P.  "**Named Insured**" means **Program Providers** furnishing **Matter** to the **First Named Insured**.

Part V.  **CONDITIONS, D.  Change of Operations** is deleted and replaced by:

  D.  **Change of Operations**

  This policy applies to the **Scheduled Production(s)** and **Insureds** described at the Inception Date of this policy and by monthly bordereaux as reported by the **First Named Insured** during the Policy Period.  The **Named Insured** shall promptly pay any additional premium that becomes due.

Part V.  **CONDITIONS, E. 1.  Named Insured's Duties in the Event of Claim; Conduct of Defense; Cooperation** of the policy is deleted in its entirety and replaced by the following:

  E.  **Defense; Cooperation of Insured; Settlement; Confidentiality of Sources**

  1.  **Insured's Duties in the Event of Claim; Conduct of Defense; Cooperation**

      a.  The **First Named Insured** or the **Named Insured** shall give prompt notice to the Company of any **Claim**

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Authorized Representative

or suit under this policy.

Notification will be sent to the Company in care of the Company's AXIS PRO business unit as follows:

Claims Department
AXIS PRO
Two Pershing Square, Suite 800, 2300 Main Street
Kansas City, Missouri  64108-2404
Email:  USclaimnoticekc@AXISCapital.com
Fax:  816.471.6119

b.    The **First Named Insured** and **Named Insured** shall have the right and duty to defend any **Claim** or suit for which coverage is afforded under this policy, subject to the following conditions:

    1)    The **First Named Insured** will employ counsel to represent the **Insured** for defense of any such **Claim** or suit from the schedule stated below, or, the **First Named Insured** may employ alternate counsel with the prior written approval by the Company, which shall not be unreasonably withheld.

    Schedule of Pre-Approved Counsel

| Jurisdiction in which Claim is Made | Law Firm |
|---|---|
| Los Angeles | Sidley Austin |
| Texas | Hayes and Boone |
| New York | Miller and Wrubel |
| Other jurisdictions not specified above | Davis, Wright and Tremaine |
|  | Levine, Sullivan, Koch and Schulz |

    2)    Staffing and hourly rates shall be negotiated with the Company at the time the **Claim** is reported.

    3)    If the **Claim** results in a suit, the **First Named Insured** or the **Named Insured** shall file proper pleadings in said suit within the time required by law for filing same, keep the Company informed of all developments and send to the Company any documents requested by the Company.

If the suit proceeds to trial, the **First Named Insured** or the **Named Insured** will continue to conduct the defense thereof.  The Company, at its own election and expense, shall have the right to associate with the **First Named Insured** and the **Named Insured** in the defense of the **Claim**.

c.    The **Insureds** will in all respects cooperate with, and provide information requested by, the Company with respect to any **Claim** for which insurance is afforded under this policy and, at the Company's request, assist in mitigating **Damages**, making settlements and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured**.  The **Insured** will attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The **Insured** and the counsel employed to defend the **Insured** will comply with all litigation and billing standards or procedures requested by the Company.

d.    The rights of an **Insured** under this policy will not be prejudiced by the refusal of any **Insured**, or anyone for whose acts any **Insured** is legally liable, to reveal the identity of a confidential source or to divulge confidential information in connection with a **Claim** under the policy.

Part V. **CONDITIONS, H. Subrogation**, is amended to add the following at the end thereof:

However, the Company waives its rights to pursue subrogation in connection with payments under this policy against individuals or entities with whom the **Named Insured** has entered into a contractual agreement requiring such waiver of subrogation.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Authorized Representative

Part V. **CONDITIONS, M. Authorization** is deleted and replaced by:

By acceptance of this Policy, the **First Named Insured** shall be responsible for, and agrees to act on behalf of the **Named Insureds** with respect to:

1. providing and receiving notices, including cancellation and nonrenewal or **Claims**, under the policy;

2. the agreement to and acceptance of the policy, endorsements, or alterations in the policy or assignments of interest thereunder;

3. submitting the applications for the purpose of procuring the policy, including the submission of any information included therewith; however, the **Named Insureds** shall retain authorization to complete or compile the information requested in any such submission and for any representations therein that are the subject of Part V. **CONDITIONS, N. Representations**; and

4. declaring **Scheduled Productions** to the Company by means of monthly bordereaux.

and the **Named Insureds** agree that the **First Named Insured** shall act on their behalf in all such matters, including any other matters specifically stated in any other provision of the policy.

Except as stated above, this endorsement does not change any other provisions of this policy.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 3

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CANCELLATION/NONRENEWAL NOTICE ENDORSEMENT - MANUSCRIPT**

This endorsement modifies insurance provided under the following:

**AXIS® PRO FILM & ENTERTAINMENT LIABILITY POLICY FE-003 (07-09)**

In the event of cancellation or nonrenewal of the policy by the Company, other than for nonpayment of premium, the Company will provide written notice to the **First Named Insured** stating when, not less than ninety (90) days thereafter, such cancellation or nonrenewal shall be effective.  Written notice will not be less than as stated in the cancellation or nonrenewal provisions.

If cancellation is a result of failure to pay the premium, the Company will provide written notice in accordance with the **Cancellation** condition, Part **V., L.1.** or a state amendatory endorsement applicable thereto.

Except as stated above, this endorsement does not change any other provisions of this policy.

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page  1  of  1                                                    _____
                                                                 Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 4

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EACH SCHEDULED PRODUCTION MANUSCRIPT ENDORSEMENT

This endorsement modifies insurance provided under the following:

## AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)

In consideration of the premium charged, it is agreed that:

The following is added as a **Program Provider**:

SEE BORDEREAUX (to be declared monthly by the **First Named Insured**).   Such bordereau will include the name of the **Program Provider**, specific job information and related production cost(s).

The following is added as a **Scheduled Production(s)**:

SEE BORDEREAUX.

Endorsement Premium:  $.15 rate per gross production cost as provided by Bordereaux   (Minimum Earned per Part V.**C.** below.)

It is agreed Part II., **DEFINITIONS, A., C., L., P., Q.** and **U.**, of the policy or as otherwise revised by any endorsement, as this endorsement is intended to supersede any other provisions to the contrary, are deleted in their entirety and replaced by the following:

A. "**Additional Insured**" means any person or entity that the **First Named Insured** or any **Subsidiary** has agreed to hold harmless or indemnify for the **Scheduled Production(s)**, but only with respect to the circumstances specified in Part II., **DEFINITIONS, C. Assumed Under Contract**.  The coverage provided to such **Additional Insureds** by this policy is primary and not excess of or contributory to any other insurance provided for the benefit of or by such **Additional Insured**.

C. "**Assumed Under Contract**" means liability assumed by the **First Named Insured** or its **Subsidiaries** in the form of hold harmless or indemnity agreements executed with any party, but only as respects a **Scheduled Production.**

Examples of **Assumed Under Contract** are hold harmless or indemnity agreements with advertisers, advertising agencies, publishers, broadcasting companies and networks, cable television systems, authors and other entities distributing **Matter**.

L. "**Insured**" means, individually and collectively:

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

1. the **Program Provider**, which shall also include the **First Named Insured** in its capacity as a **Program Provider** creating or furnishing **Matter** for a **Scheduled Production(s)** declared to this policy;

2. any **Subsidiary** in existence on the Inception Date of this policy;

3. the **Program Provider** or **Subsidiary's** stockholders for their liability as stockholders;

4. the **Program Provider** or **Subsidiary's** partners, officers, directors and full-time, part-time, seasonal, leased, or temporary employees or volunteers but only with respect to their activities within the scope of their duties in such capacity for the **Named Insured** or **Subsidiary**;

5. the **Program Provider** or **Subsidiary's** former partners, officers, directors and employees, but only with respect to their activities within the scope of their duties as the **Program Provider's** or **Subsidiary's** partner, officer, director or employee;

6. any person or entity providing services or **Matter** for, on behalf of or at the direction of the **Program Provider** or **Subsidiary** for a **Scheduled Production** and for which the **Program Provider** or **Subsidiary** agreed to provide insurance provided by this policy;

7. any person or entity that the **First Named Insured** or **Subsidiary** is required by written contract to hold harmless or indemnify for the **Scheduled Production(s)**, but only with respect to the circumstances specified in Part II., **DEFINITIONS, B. Assumed Under Contract**;

8. any loan-out company and their employees, but only with respect to the specific work for which the loan-out company has agreed to supply the services of its employees to the **Program Provider** or any **Subsidiary** for a **Scheduled Production(s)**; or

9. any person or entity added by endorsement to the policy as an additional **Insured**.

10. The **First Named Insured** in connection with a **Scheduled Production** in its capacity as a **Program Provider** with respect to a **Scheduled Production**.

In the event of death, incompetency, insolvency or bankruptcy of any **Insured**, the term **"Insured"** includes the **Insured's** legal representative, but only with respect to their activities within the scope of their duties in such capacity.

**P.** **"Named Insured"** is a **Program Provider.**

**Q.** **"Occurrence"** means the actual or alleged:

1. acts committed in the process of researching, investigating, gathering, obtaining, acquiring, developing, preparing, compiling or producing **Matter**;

2. the licensing, syndication, serialization, sale, distribution, lease, release, re-release, exhibition, broadcast or other dissemination of **Matter**; or

3. owning, housing, or maintaining or possessing titles or other **Scheduled Productions** in making them available for distribution.

**U.** **"Scheduled Production(s)"** means the production(s) shown on this **EACH SCHEDULED PRODUCTION AMENDATORY ENDORSEMENT** and related **Advertising** or **Merchandising Licensing**.

It is also agreed Part II., **DEFINITIONS**, of the policy is amended to add the following:

**"Program Provider"** means a production company, person or entity including the **First Named Insured, e** furnishing **Matter** to A&E Television Networks ("AETN"), but only as respects the **Scheduled Production(s)** on file with the Company and AETN.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____

Authorized Representative

It is also agreed Part III., **POLICY LIMITS AND SELF-INSURED RETENTION**, of the policy is deleted in its entirety and replaced by the following:

**A.  Policy Limits**

The most the Company will pay for the total of all **Damages** and **Claims Expense** during any one Policy Period for each **Scheduled Production** shall be:

$ ▮▮▮▮▮ **Each Loss** per **Scheduled Production**
$ ▮▮▮▮▮ Total Limit of Insurance Any One Policy Period per **Scheduled Production**

Regardless of the number of:

1.  **Insureds** under this policy;

2.  Broadcasts, telecasts, cablecasts, exhibitions, distributions or **Advertising**;

3.  **Occurrence(s)**;

4.  **Scheduled Production(s)**;

5.  Persons or organizations who sustain **Damages**;

6.  **Claims** made or suits brought;

7.  **Program Providers**; or

8.  Policies issued by the Company;

the Company's obligation to pay **Damages** or **Claim Expense** end when the Company has paid the applicable limit of insurance.

**B.  Self-Insured Retention**

The Self-Insured Retention of $▮▮▮▮▮ **Each Loss** except $▮▮▮▮▮ **Each Loss** for reality programs shall be the amount first incurred and payable by the **Program Provider** for **Each Loss**.  The Self-Insured Retention applies to both **Damages** and **Claim Expense** or any combination thereof.

The Policy Limit shall be in excess of the Self-Insured Retention amount shown above.  The Self-Insured Retention shall not reduce the applicable Policy Limit.

**C.  Application of Policy Limit and Self-Insured Retention to Each Loss**

The Policy Limit and the Self-Insured Retention applying to **Each Loss** shall be the Policy Limit and Self-Insured Retention in effect on the first date on which an **Occurrence** gave rise to a **Claim**.  **Occurrences** that take place on one or more dates during a Policy Period or periods of insurance issued by an Insurer and involve the same or related subject, person, class of persons or have common facts or circumstances or involve common transactions, infringements, events or decisions, regardless of the number of repetitions, alterations, actions or forms of communication will be deemed related **Occurrences**.  In the case of a continued distribution of **Scheduled Production(s)** or the first distribution of a **Scheduled Production(s)** held by AETN during the Policy Period after the expiration of the last consecutive Policy Periods of insurance issued by an **Insurer**, the date of any related **Occurrences** and any resulting **Each Loss** shall be deemed to be the date on which the first of the related **Occurrences** takes place during a Policy Period of insurance issued by an **Insurer**.  Only the applicable Policy Limit and Self-Insured Retention in effect when the first of the related **Occurrences** took place will apply.

It is also agreed Part V., **CONDITIONS, C., G., and N.**, of the policy are deleted in their entirety and replaced by the

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

following:

**C.  Premium**

The **Program Provider** shall pay to the Company the required premium for its **Scheduled Production(s)** as declared by bordereaux.
In the event the policy is canceled or this endorsement is deleted on or after execution of the contract for the release of the **Scheduled Production(s)**, the premium shall be fully earned.

**G.  Other Insurance**

The coverage provided by this **Each Scheduled Production Amendatory Endorsement** shall be primary and not excess of or contributory to any other insurance maintained by the **Program Provider**, AETN, their parents or **Subsidiaries** for those **Scheduled Production(s)**, or as otherwise stated by endorsement.

**N.  Representations**

By acceptance of this policy, the **Program Provider** agrees:

1.  the statements furnished to the Company in the Application for this insurance are accurate and complete;

2.  those statements furnished to the Company are representations the **Program Provider** made to the Company;

3.  those representations are a material inducement to the Company to issue this policy;

4.  the Company has issued this policy in reliance upon those representations;

5.  this policy embodies all agreements existing between the **Program Provider** and the Company or any of its agents relating to this insurance; and

6.  the Application, including any attachments, and all other information and materials submitted by or on behalf of the **Program Provider** to the Company in connection with the Company underwriting this policy, will be kept on file by the Company, deemed attached to this policy as if physically attached to it and shall become incorporated in and constitute a part of this policy.

Except as stated above, this endorsement does not change any other provisions of this policy.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
                                                                                                    Authorized Representative

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
**303 W. Madison, Suite 500, Chicago, Illinois 60606**
**866-259-5435**

Endorsement No. 5

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MERCHANDISING LICENSING ENDORSEMENT - MANUSCRIPT**

This endorsement modifies insurance provided under the following:

## AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)

In consideration of the premium charged, it is agreed that:

Part IV. **EXCLUSIONS, A.**20 is deleted in its entirety.

Except as stated above, this endorsement does not change any other provisions of this policy.

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 6

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### MITIGATION EXPENSE COVERAGE ENDORSEMENT - MANUSCRIPT

This endorsement modifies insurance provided under the following:

## AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)

In consideration of the premium charged, it is agreed that Part I., **COVERAGE AGREEMENTS** is amended to add the following:

**Mitigation Expense and Cost Coverage**

The Company will indemnify the **Named Insured** for expenses and costs incurred in excess of the Self-Insured Retention and within the applicable sub-limit to mitigate or correct a circumstance as a result of an **Occurrence** in connection with **Scheduled Production(s)** during the Policy Period that is reasonably expected to result in a covered **Claim** for or arising out of :

1.  The items listed in 1. – 12. of **Part I., COVERAGE AGREEMENTS, Media Liability**; provided, however, that the **Named Insured**:

    a.  gives the Company prompt notice of the circumstance and obtains the Company's approval before incurring any expenses or costs, or establishes to the Company's satisfaction within sixty (60) days of learning of the circumstance that the expense and costs were reasonably incurred; and that such approval by or satisfaction of the Company shall be at its sole discretion;

    b.  satisfies the Company, in its sole discretion, that an **Insured** has committed a specific act as described in **Part I., COVERAGE AGREEMENTS, Media Liability**, 1. and 2., which is likely, if not mitigated or corrected, to result in **Damages** equal to or in excess of the expense or costs to be indemnified;

    c.  satisfies the Company, in its sole discretion, that the expenses and costs to be incurred are necessary to avoid a **Claim** that is likely to be brought by a third party; and

    d.  satisfies the Company, in its sole discretion, that the **Insured** is legally unable to recover such expenses from any client, subcontractor or third party involved in the circumstance.

Except as stated above, this endorsement does not change any other provisions of this policy.

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____

Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 7

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**MUSIC COVERAGE ENDORSEMENT - MANUSCRIPT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)**

In consideration of the premium charged, it is agreed that:

Part IV. **EXCLUSIONS, A.**22. does not apply to music contained in any **Scheduled Production(s)**.

Except as stated above, this endorsement does not change any other provisions of this policy.

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**AXIS Insurance Company**
**303 W. Madison, Suite 500, Chicago, Illinois 60606**
**866-259-5435**

Endorsement No. 8

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**TITLE COVERAGE ENDORSEMENT - MANUSCRIPT**

This endorsement modifies insurance provided under the following:

**AXIS PRO® FILM AND ENTERTAINMENT LIABILITY POLICY, FE-003 (07-09)**

In consideration of the premium charged, it is agreed that:

Part IV. **EXCLUSIONS**, **A**.21. is deleted in its entirety.

Except as stated above, this endorsement does not change any other provisions of this policy.

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

Page  1  of  1                                                    _____
                                                                 Authorized Representative

NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 9

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SUBPOENA DEFENSE LEGAL EXPENSE ENDORSEMENT'

It is agreed Part I., **COVERAGE AGREEMENTS**, of the policy is amended to add the following:

**Subpoena Defense Expense Protection**

The Company will pay on behalf of the **Insured** all **Subpoena Defense Expense** in excess of the Self-Insured Retention and within the applicable Policy Limit as a result of an **Occurrence** in connection with **Scheduled Productions** during the Policy Period that gives rise to a **Claim**, regardless of when a **Claim** is made or suit is brought.

With respect to the coverage afforded under this endorsement only, it is also agreed Part II., **DEFINITIONS, E.** "**Claim**" of the policy is deleted in its entirety and replaced by the following:

**E.** "**Claim**" means a subpoena of documents, notes, tapes, out-takes, testimony, or other information related to **Matter**.

With respect to the coverage afforded under this endorsement only, it is also agreed Part II., **DEFINITIONS, J.** "**Each Loss**" of the policy is deleted in its entirety and replaced by the following:

**J.** "**Each Loss**" means all **Subpoena Defense Expense** arising out of an **Occurrence**.

With respect to the coverage afforded under this endorsement only, it is also agreed Part II., **DEFINITIONS, Q.** "**Occurrence**" of the policy is deleted in its entirety and replaced by the following:

**Q.** "**Occurrence**" means the actual or alleged:

1.  release, exhibition, publication, broadcast or other dissemination of **Matter**; or

2.  acts committed in the process of researching, investigating, gathering, acquiring, obtaining, preparing, compiling, or producing **Matter**

by or with the permission of the **Insured**.

With respect to the coverage afforded under this endorsement only, it is also agreed Part II., **DEFINITIONS**, of the policy is amended to add the following:

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

"**Subpoena Defense Expense**" means reasonable fees, costs and expenses incurred by an attorney in responding to and protecting the First Amendment and related rights of free expression of an **Insured** against a **Claim**.

With respect to the coverage afforded under this endorsement only, it is also agreed Part V., **CONDITIONS**, **E.1**. of the policy is amended to add the following, which shall take precedence when in conflict with Part V.**E.1**.:

The **Named Insured** may employ a properly qualified media attorney to respond to any **Claim** without first notifying the Company of the **Claim** or receiving the Company's prior approval to retain the attorney; provided that:

(1) the urgency of the **Claim**, in the **Named Insured's** judgment, warrants immediate action by a media attorney;

(2) the **Named Insured** will provide the Company notice of the **Claim** as soon as possible and shall consult with the Company regarding the attorney employed;

(3) if the **Claim** continues following notice to the Company, the provisions of Part V., **CONDITIONS**, **E.1**. of the policy regarding employment of counsel will take effect, as reasonable;

(4) the **Named Insured** and any attorney employed to respond to a **Claim** under this endorsement will comply with all litigation and billing standards or procedures requested by the Company.

The amount of Self-Insured Retention applicable to this endorsement will be ▮▮▮▮▮ **Each Loss**.

The co-insurance percentage for which the **Insured** will be responsible in excess of the applicable Self-Insured Retention for this endorsement will be 0%.

A sub-limit of ▮▮▮▮▮ **Each Loss** shall apply to the coverage afforded under this endorsement and shall be the Total Limit of Insurance for the total of all **Claims** covered under this endorsement and shall also apply against the Total Limit of Insurance stated in the Declarations of the policy.

All other provisions of this policy remain unchanged.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## AXIS Insurance Company
### 303 W. Madison, Suite 500, Chicago, Illinois 60606
### 866-259-5435

Endorsement No. 10

Effective date of this endorsement:  12:01 a.m. on April 1, 2013
To be attached to and form part of Policy Number: MCN000193951301
Issued to: Program Providers Furnishing Matter to A&E Television Networks

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

## FILM & ENTERTAINMENT LIABILITY POLICY FE-003-N

In consideration of the payment of the premium, it is agreed that:

1.  **SECTION I. COVERAGE AGREEMENTS**, A., **Media Liability**, is deleted in its entirety and replaced by the following:

    A.  **Media Liability**

    The Company will pay on behalf of the **Insured**  all **Damages** and **Claim Expense**, in excess of the Self-Insured Retention and within the applicable Policy Limit, as a result of an **Occurrence** in connection with **Scheduled Production(s)** during the Policy Period that gives rise to a **Claim**, regardless of when a **Claim** is made or suit is brought, including but not limited to **Claims** for or arising out of:

    1.  any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage, outrageous conduct or prima facie tort;

    2.  any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

    3.  any form of infringement or dilution of title, slogan, trademark, trade name, trade dress, service mark or service name;

    4.  any form of infringement of copyright, violation of **Droit Moral**, passing-off, plagiarism, **Piracy** or misappropriation of ideas under implied contract;

    5.  breach of a license to use a third party's trademarked or copyrighted **Matter**, but only arising from a use that unintentionally exceeds the scope of the license with respect to the territory, period or media in which the **Matter** may be used and only when alleged in conjunction with a **Claim** covered in 3. or 4. above;

Class Code: 2-14160

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

6. breach of agreement, breach of confidentiality or promissory estoppel, in connection with the failure to maintain the confidentiality of a source or materials furnished by a source or the failure to portray a source or a subject in a certain light;

7. failure to attribute authorship or provide credit under any agreement to which an **Insured** is a party;

8. wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

9. false arrest, detention or imprisonment, abuse of process or malicious prosecution;

10. **Unfair Competition** or conspiracy, but only when alleged in conjunction with a **Claim** covered in 1. – 9. above;

11. negligent supervision of an employee, but only when alleged in conjunction with a **Claim** covered in 1. – 9. above;

12. **Contextual Error or Omission**; or

13. negligent transmission of a computer virus or malicious code, or any unauthorized access to or posting on a covered website of an **Insured** that results in a **Claim** covered in 1. - 9. or 12. above.

Provided, however, that **Claims** arising out of 1. – 10. above shall be covered unless such conduct is determined to be intentional as evidenced by final adjudication.

In all events, this policy shall cover **Claims** for vicarious liability arising out of the conduct set forth in 1.-10. above.

2. **SECTION II., DEFINITIONS , H.,** is amended by the addition of the following:

In applying the foregoing, punitive damages, exemplary damages and multiplied damages are not insurable in New York.

3. **SECTION II., DEFINITIONS,** is amended by the addition of the following:

"**Termination of Coverage**" means the cancellation or non-renewal of this policy by the **First Named Insured** or the Company, or if the Company offers to renew this policy on terms which involve a decrease in the Limit of Insurance, increased Retention, a reduction in coverage, the addition of an exclusion, or any other change in coverage less favorable to the **Insured**, such conditional renewal shall be deemed a **Termination of Coverage**.

4. **SECTION III., POLICY LIMITS AND SELF-INSURED RETENTION, A. Policy Limits** is amended by the addition of the following:

If this policy provides coverage solely for **Claim Expense** for a **Claim** and such amounts qualify as legal services insurance pursuant to 11 NYCRR 262.0, et seq. (Regulation 162), then where required by 11 NYCRR 71.3(f) (Regulation 107), no more than twenty-five percent (25%) of this policy's limit of liability may be reduced by the payment of such **Claim Expense**. Provided, however, that such defense-only coverage may not be provided for a claim of legal liability that could be covered by a policy of liability insurance in New York

5. **SECTION IV., EXCLUSIONS, A. 11.** is amended by the addition of the following:

With respect to tobacco, this exclusion is limited to the deleterious health effects associated with the use of such products.

6. **SECTION IV., EXCLUSIONS, A. 19.** subparagraph a., is deleted in its entirety and replaced by the following:

a. Smoke, vapor, soot, fumes, acids, alkalis, chemicals or silica;

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

7. **SECTION V., CONDITIONS, E., Defense; Cooperation of Insured; Settlement; Confidentiality of Sources,** subparagraph 1.a. is amended by the addition of the following:

> Notice given by or on behalf of an **Insured**, or written notice by or on behalf of an injured person or any other claimant, to any licensed agent of the Company in this state, with particulars sufficient to indentify the **Insured**, shall be deemed notice to the Company of a **Claim**.

> Failure on the part of an **Insured** to provide any notice to the Company as required under the terms of this policy within the time prescribed by this policy for providing such notice, shall not invalidate any **Claim** made by the **Insured**, an injured person, or any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

> Failure on the part of an **Insured** to provide any notice to the Company as required under the terms of this policy within the time prescribed by this policy for providing such notice, shall not invalidate any **Claim** made by the **Insured**, an injured person, or any other claimant unless the failure to provide timely notice has prejudiced the Company, except as provided in the immediately preceding paragraph.

8. **SECTION V., CONDITIONS, E. Defense; Cooperation of Insured; Settlement; Confidentiality of Sources, 1.b.** is deleted in its entirety and replaced by the following:

> b. The Company shall have the right and duty to defend any **Claim** or suit, even if such **Claim** or suit is groundless, false or fraudulent, pursuant and subject to all terms and conditions of the policy.  The Company will employ counsel to represent the **Insured,** subject to the **Insured's** consent, which consent shall not be unreasonably withheld.

> The **Insured** may participate in, and assist in the direction of, the defense of any covered **Claim** with such participation and assistance not limiting the Company's right to control the defense.  The **Insured** will have the option to consent to a settlement of any covered **Claim**, which consent shall not be unreasonably withheld.

> When the Limit of Insurance is exhausted, the Company agrees to take whatever steps are necessary to continue the defense of any outstanding **Claim** and avoid a default judgment during the transfer of control to the **Insured**.  If the Company does so, the **Insured** agrees to pay reasonable expenses that the Company incurs for taking such steps after the Limit of Insurance is exhausted.

9. **SECTION V., CONDITIONS, G., Other Insurance** is deleted in its entirety and replaced by the following:

> If other valid and collectible insurance is available to any **Insured** for any **Claim** the Company covers, this insurance is excess over such other insurance in order to avoid duplication of payment on **Claims**, except when the other insurance is purchased by the **Insured** only to apply in excess of this insurance and no other insurance exists.

10. **SECTION V., CONDITIONS, K., Action Against the Company** is deleted in its entirety and replaced by the following:

> **K.  Action Against the Company**

> No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy by all **Insureds**.

> Notwithstanding the foregoing, an action may be brought against the Company to recover on "an agreed settlement;" or on a judgment or award against an **Insured**, if the Company does not pay any judgment covered by the terms of this policy within thirty (30) days from the service of notice of the judgment upon the **Insured** or its attorney and on the Company, except during a stay or limited stay of execution against the **Insured** on such judgment.  Any person or organization, or the legal representative thereof, who has secured such judgment or an agreed settlement, will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

"An agreed settlement" means a settlement and release of liability signed by the Company, the **Insured** and the claimant or the claimant's legal representative.

No person or organization will have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor will the Company be impleaded by the **Insured** or the **Insured's** legal representative.

To the extent that this policy provides coverage for a **Claim** arising out of death or personal injury of any person, if the Company disclaims liability or denies coverage for such **Claim** based on a failure to provide timely notice, then the injured person or other claimant may maintain an action directly against the Company, in which the sole question is the Company's disclaimer or denial based on the failure to provide timely notice, unless within sixty (60) days following such disclaimer or denial, the **Insured** or the Company initiates an action to declare the rights of the parties under this policy and names the injured person or other claimant as a party to the action.

11. **SECTION V., CONDITIONS, L., Cancellation and Nonrenewal**, 1. **Cancellation**, is deleted in its entirety and replaced by the following:

1. This policy may be canceled by the **First Named Insured** by mailing to the Company or its authorized representative written notice stating when thereafter the cancellation will be effective.

The Company may cancel this policy by mailing or delivering to the **First Named Insured** at the address shown on the policy, and to the **First Named Insured's** authorized agent or broker, written notice of cancellation at least sixty (60) days before the effective date of cancellation; except that if the Company cancels this policy for non-payment of premium, the Company shall deliver to the **First Named Insured** at the address shown on the policy, and to the **First Named Insured's** authorized agent or broker, written notice of cancellation at least fifteen (15) days before the effective date of cancellation, stating the reason for cancellation, and such notice of cancellation shall inform the **Insured** of the amount due.

Provided however, that after this policy has been in effect for sixty (60) days, or on or after the effective date if this policy is a renewal, the Company may cancel this policy only for the following reasons:

a. nonpayment of premium;

b. conviction of a crime arising out of acts increasing the hazard insured against;

c. discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a **Claim** thereunder;

d. after issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

e. material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time this policy was issued or last renewed;

f. a determination by the superintendent that continuation of the present premium volume of the Company would jeopardize the Company's solvency or be hazardous to the interests of policyholders of the Company, its creditors, or the public;

g. a determination by the superintendent that the continuation of this policy would violate, or would place the Company in violation of, any provision of the New York Insurance Law; or

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____
Authorized Representative

   h.   revocation or suspension of an **Insured's** license to practice his or her profession, if applicable, or, if the **Insured** is a hospital, it no longer possesses a valid operating certificate under Section 2801-A of the New York Public Health Law.

If this policy is canceled prior to the Expiration Date and the minimum premium does not apply, the premium due the **First Named Insured** will be:

   a.   the pro rata unearned amount of the annual premium subject to a factor of .90, if such cancellation is by the **First Named Insured**; or

   b.   the pro rata unearned amount of the annual premium, if such cancellation is by the Company;

but the return of such premium to the **First Named Insured** is not a condition of cancellation.

12. **SECTION V., CONDITIONS, L., Cancellation and Nonrenewal**, 2., **Nonrenewal**, is deleted in its entirety and replaced by the following:

   2.   The Company may elect to not renew this policy by mailing or delivering written notice of nonrenewal to the **First Named Insured** at the address shown on this policy, and to such **First Named Insured's** authorized agent or broker, at least sixty (60) days, but not more than one hundred twenty (120) days prior to the expiration of this policy, indicating the Company's intention:

   a.   not to renew this policy; or

   b.   to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased retention or addition of exclusion, or upon increased premiums in excess of ten percent (10%) (exclusive of any premium increase generated as a result of increased exposure limits or as a result or as a result of experience rating, loss rating, retrospective rating or audit).

Such notice shall contain the specific reasons for the refusal to renew or the conditional renewal and shall set forth the amount or a reasonable estimate of any premium increase and describe any additional proposed changes.  If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.  Delivery of the notice will be the same as mailing.

If the Company does not provide notice of nonrenewal or conditional renewal as provided above, coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is provided, unless the **First Named Insured**, during this 60-day period, has replaced the coverage or elects to cancel.  The maximum aggregate Limit of Insurance of the expiring policy shall be increased in proportion to the policy extension provided for in this paragraph.

If the Company provides notice of nonrenewal or conditional renewal on or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another **Policy Period**, at the lower of the current rates or the prior period's rates, unless the **First Named Insured**, during the additional **Policy Period**, has replaced the coverage or elects to cancel.

The Company will not send the **Insureds** a notice of nonrenewal or conditional renewal if the **Insureds**, their authorized agent or broker or another insurer of the **Insureds** provides notice that the policy has been replaced or is no longer desired.

If the **Insureds** elect to accept the terms, conditions and rates of the conditional renewal notice, a new aggregate Limit of Insurance shall become effective as of the Inception Date of the renewal, subject to regulations promulgated by the Superintendent of Insurance, and the Company shall not be required to give notice of an Automatic Extended Reporting Period or offer an Extended Reporting Period option for purchase.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement.  If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

                                                      Authorized Representative

13. **SECTION V., CONDITIONS, N., Representations** is amended by the addition of the following:

Notwithstanding the foregoing, no misrepresentation shall avoid this policy or defeat recovery hereunder unless such misrepresentation is material. No misrepresentation shall be deemed material unless knowledge by the Company of the facts misrepresented would have led to a refusal by the Company to issue this policy.

14. **SECTION V., CONDITIONS,** is amended by the addition of the following:

**Bankruptcy**

The bankruptcy or insolvency of the **Insured** or **Insured's** estate will not relieve the Company of the Company's obligation under this insurance. However, this insurance will not apply to liability directly or indirectly due to such bankruptcy, insolvency, receivership or subsequent liquidation.

Except as stated above, this endorsement does not change any other provisions of this policy.

If the Company issued this endorsement to be part of the **Insured's** policy on the Inception Date, then the countersignature on the Declarations Page also applies to the endorsement. If this endorsement is effective after the Inception Date of the **Insured's** policy, the Company's authorized representative must countersign in the space below to validate the endorsement.

_____<br>Authorized Representative

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**AXIS Insurance Company**
303 W. Madison, Suite 500, Chicago, Illinois 60606
866-259-5435

## NEW YORK CONSENT AGREEMENT
## CLAIM EXPENSE WITHIN THE POLICY LIMIT (CEWL)

I hereby acknowledge and consent to the fact that the Limit of Insurance contained in the policy to be issued to the undersigned subsequent to the date of this Consent shall be reduced, and may be completely exhausted, by legal defense costs (**"Claim Expense"** as defined in the policy) and, to the extent that the Limit of Insurance is thereby exceeded, the Company shall not be liable for legal defense costs or for the amount of any judgment or settlement to the extent that such exceeds the Limit of Insurance of this policy.

I further acknowledge and consent to the fact that legal defense costs (**"Claim Expense"** as defined in the policy) shall be applied against the Self-Insured Retention, and that legal defense costs shall reduce, and may exhaust the Self-Insured Retention.

_____
Signature of **Named Insured** or the **Insured's** Authorized Representative

_____
Date

**Named Insured**: Program Providers Furnishing Matter to A&E Television Networks

Policy Effective Date: April 1, 2013

NY-07 (02-11)
Class Code: 2-14160